Thank you, Your Honors. Good morning. May it please the Court, my name is Mary Schultz. I represent the appellant in this case, Mark Cox. We're asking that the Court reverse a district court decision to dismiss this case without prejudice and to remand it for further proceedings. I want to try and conceptualize this because I think the record is fairly clear. In a country that is awash in opioid addiction, this case comes before this Court on an issue of specific jurisdiction, where federal and state controlled substance acts address an attempt to regulate the source of opioid addiction, a known source, which is physicians who over-prescribe opioids in the context of, quote, pain management, oftentimes. So we have to look at each of the defendants individually for this personal jurisdiction analysis. So I'm trying to drill down to where we need to drill down. So with regard to Bledsoe, the PA, are you giving up on Bledsoe? He's not a factor. Okay, so you were waiving any arguments regarding dismissal of Bledsoe? Yeah, he was at the very beginning. So the Court should look at... So I think what we're really interested in maybe then is Grittman, and help us understand how do you all have personal jurisdiction over the hospital? So Grittman, the thing about Grittman is we don't have enough evidence, but we do have ER 81 through 109, which is the relentless, unremitting, intentional, purposeful availment of Dr. Marciano to deliver opioids. So I'm less concerned about Dr. Marciano. She's part of it. But how do you how do you attach it to the hospital? So when a physician generates recurring business, which is done here through the opioid dependencies, that physician is bringing in revenue to the entity, which joins into Grittman as part of their consolidated financial statement. So in other words, in the medical profession right now, all of the doctors are going on to independent contracts. And the reason is like this. The reason is something like this. In Washington, we have specific philosophy, theories, and case precedent that says that you cannot escape, you as an institution cannot escape liability for your physicians simply because you put them on independent contract arrangements. And I would also add these independent contract arrangements differ from facility to facility. So we don't know here what the arrangement is between Grittman to Moscow Family Medicine to Dr. Marciano. What we do know is that Moscow Family Medicine is part of Grittman, reports its revenue through Grittman, and that Grittman benefits from the behavior of its prescribing physicians who actively seek patients in the state of Washington and then prescribe opioid treatment programs for them in the state of Washington. So it is Grittman ultimately that is benefiting from the revenue that is being generated through opioid transactions in the state of Washington. Now, in the Cubbage case, you can tell that the court there allowed a lot of discovery. And I asked for it here in the supplemental briefing that the district court requested. I laid out 19 specific provisions that I intended to discover from Grittman to understand exactly what they were saying, because Grittman's evidence through Dr. Marciano, through Moscow Family Medicine, is very inconsistent and internally contradictory. They use phrases like, well, I didn't treat her in Washington. And then you find from a third-party source, two of them, SIDS Pharmacy and Rite Aid Pharmacy, this litany of medical treatment of opioids being... Those are prescriptions. So if you had been permitted discovery, what questions would you would like to have had answered about Grittman? Well, are we talking about Grittman or Marciano? Let's talk about Grittman first. Okay. So the general jurisdiction, so specific jurisdiction with respect to Grittman, I believe we've already demonstrated. Because they're actively advertising into the Washington Forum. They're actively requesting that Washington patients... But was there a necessity that all this advertising that they were doing in Washington related to the treatment that this patient was receiving? I mean, they could have been advertising all sorts of things, right? But your allegation in this lawsuit is that Dr. Marciano was overprescribing an opiate. I mean, obviously Grittman wasn't putting up billboards saying, opiates here. How do I... Well, maybe she was. I mean, see, that's part of the problem is if... So this is not like the cases where you have, as an example, you go to Los Angeles. I go to Los Angeles for cardiac procedure. Best hospital in the country. I'm going to do it there. And the physician does the procedure there and then releases me to come back to Washington with a transitory pain medication prescription. So the intent of any further pain medication is going to be transferred over to the Washington primary care provider. The L.A. cardiologist is not intending to continue to prescribe me opioids in Washington for the next seven years. That's not what that's about. So that is kind of the personal service medical process. If you have a facility, though, that sits on the Washington border and advertises primary care for Washington patients, that facility is advertising for long-term connection with Washington patients. And we know that Grittman does this. And they're inviting them to come to Idaho. Well, they're inviting them to come to Idaho, and then they're writing them opioid prescriptions to be affected by a Washington pharmacist. So it's not For the convenience of the patient. Oh, no. That's not for the convenience of the patient. This is where you get into the Controlled Substance Act. So the interesting thing about the Controlled Substance Act is that it actually puts the physician at the situs of the delivery. So this is what's interesting about Schedule II opioids that differs from any other case that you have before you. We're talking about a position that is rendering herself subject. And so, again, I want to try to parse these. I'm sort of—I understand where you're coming from with Marciano. I'm still stuck on Grittman. Grittman's not the hospital or is not prescribing. The physician is prescribing. How do we get specific jurisdiction to the hospital? We have to demonstrate—well, we have to demonstrate general jurisdiction, which requires a very broad discovery process. Wait, wait, wait. I mean, did you just make a concession that you're not going after specific jurisdiction for Grittman and your only path is general? No. I'm saying we start with general jurisdiction. General jurisdiction requires all of the things that we are attempting to— Well, let's focus on specific. How do you get there for specific jurisdiction over Grittman? So specific jurisdiction needs to be the intent of the facility to deliver treatment into Washington. Specific jurisdiction is identified by the intent of the facility. This is Wright v. Yackley. At the time of the treatment being delivered by Dr. Marciano to a Washington resident on a long-term basis, what is Grittman's intent in terms of directing its medical services and medical services provider into the state of Washington? So you have to look much like Wright v. Yackley. And, in fact, we could actually use Wright v. Yackley beautifully in this situation, because this case is a logical extension of Wright v. Yackley. It brings it full circle. Let's apply it to Grittman. At the time the physician is rendering long-term medical care to the patient in Washington, what is Grittman's intent for that physician? Grittman's intent for that physician is to have its physician deliver long-term medical care into Washington to affect Washington patients, to transact business with Washington pharmacies, to order Washington pharmacies, to generate revenue for Moscow Family Medicine, which Grittman owns. In cubbage, and that's all that's needed under Wright v. Yackley. My question may be different than Judge Rodriguez, but I want to make sure, it seems to me that the cubbage analysis is going to apply to Grittman, so long as Grittman has some sort of responsibility in some way for this treatment. And it seems like you're saying today, we don't even know. No, we know. Grittman has a connection or a responsibility in some way, or is facilitating this treatment in some way. Oh, we know, because they own Moscow Family Medicine, and Moscow Family Medicine owns... So why isn't that your answer to Judge Rodriguez, of like, this is why we have Grittman in this case, is because Grittman owns the clinic, and that's where this happened, and basically without the clinic, the doctor doesn't have the ability to treat the patient, and so they're in this case. Because that's one answer. But the other answer is to use the theory of Wright v. Yackley. The Wright v. Yackley case is as good as cubbage for this case, and again, this is a logical extension. In Wright v. Yackley, you have a physician, and again, it's just a physician, but I'll get there. You have a physician who lives in South Dakota, issues one single prescription for a South Dakota resident, intended to be affected in South Dakota. The patient, so the intent at the physician's prescribing is to stay in South Dakota. Ultimately, the patient moves to Idaho, and the only thing that happens in Idaho is the physician mails the one prescription off to Idaho. So the physician didn't have any intent to operate in Idaho. In this case, let's take Grittman, because we know Dr. Marciano fits the extension of this mold, let's take Grittman. In this case, Grittman is providing doctors to deliver services into Washington for Washington patients. Do the patients have to come to Grittman? No, because as evidenced in this case, the patient can simply dial it in. All they can do, all they need to do is they need to sit in their home in Albion, Washington, pick up the phone, and call their physician, their Grittman-affiliated physician, Patricia Marciano, whose revenue sources go upwards to Grittman, and say, I need a refill. And lo and behold, an hour later, they can walk down the street to the Rite Aid pharmacy and pick up 180 tablets of an opioid. And they can do that in less than 30 days, in less than 30 days, in less than 30 days. Who is benefiting from that?  Because Grittman owns the clinic that owns the doctor. So is Grittman advertising for Washington patients? Absolutely. They've served the Palouse for 125 years, is what Grittman says. Come to us. Well, what is the treatment? Well, it's not an operation in Idaho. It's not a procedure in Idaho. It's an office visit. Where is the treatment being delivered? In Washington. By the use of Washington law, by ordering the Washington pharmacist to dispense, which the Controlled Substance Act indicates, puts the physician at the situs of the delivery, by the way, for pain that is occurring in Washington to feed an addiction that has been created in the Grittman-Moscow Family Medicine-Patricia Marciano Trilogy for the benefit of Grittman's revenue. We know, even though the court did not allow the financial statements, the consolidated financial statements as evidence, I did mention in the supplemental briefing that Grittman does have these general jurisdiction connections with the state of Washington. But the other thing you have to look at here is that Grittman, we don't know how many times they're using Washington pharmacies, but they're clearly using Washington pharmacies repeatedly. And those are orders on Washington pharmacists to deliver. You're under two minutes. Do you want to save some rebuttal time? Could I ask a question? Yes. I need to ask about the long-arm statute. So I am very, very confused by the Washington decisions on the long-arm statute. So what is your understanding of whether Washington, whether the Washington long-arm statute is coextensive with the reach of the 14th Amendment? With the? Reach of the 14th Amendment due process clause. Are those coextensive, or does the long-arm statute actually do some work so that Washington long-arm statute is narrower than that which would be permitted under the 14th Amendment? The Washington statute is supposed to exceed — I mean, I'm going to say it's coextensive, but it's considered to be one of the more liberal long-arm statutes in this State. And this is true with respect to both A and B, both transacting business and the commission of a tort? Yes. I mean, because under the Washington long-arm statute, even if you effect a transaction outside the State that has the — that has the — doesn't even need the intent, but that has the effect inside the State, that's considered a transaction in the State of Washington. Can I, on that question, can I just take a minute to talk about the Schenck and the Well, I'm familiar. I'm familiar with those — with those decisions. Okay. It looks to me like the Washington Supreme Court may have said that the transacting of business is coextensive with the 14th Amendment, but it looks like the commission of a tort may be narrower. It keeps putting qualifying language into its decisions. And we have that as late as 2017 in en banc decisions by the Washington Supreme Court. Well, but you have to remember that in those cases — so as an — so as an example, in the Lewis case, there was no treatment in the State of Washington, no intent to treat in the State of Washington. Nothing happened in the State of Washington.  I'm mostly focused on the language of the — that the Washington Supreme Court has used, because it keeps saying, well, we go as far as the 14th Amendment, consistent with the long-arm statute, or consistent with the reach of the long-arm statute. And so it makes it sound like it's gone up to the 14th Amendment, then drawn it back and said, as long as it's consistent with what our long-arm statute says. So I'm very confused as to whether they are coextensive or whether they are not coextensive. Well, I'd have to say they, you know, they are coextensive. I mean, but the ultimate key to all of this, which is established in Wright v. Yakeley, is purposeful availment. Purposeful availment versus — Well, that's the 14th Amendment standard. Yes. But it's also the long-arm. It weaves into the long — It's not the long-arm statute. The California long-arm statute says our long-arm goes as far as the 14th Amendment. Washington does not say that. It is an act-enumerated statute adopted after Illinois. Now, a State can say, nevertheless, it goes all the way to the full extent of the 14th Amendment. I just can't figure out whether Washington goes that far. So I don't think that the distinction here is necessarily determinative because of the level of intentional conduct and course of business dealings within the State of Washington that was committed by the physician and with the intent to order Washington pharmacies and the intent to address a condition that was manifesting in Washington, which was the pain. I don't think the distinctions really matter. This is a physician who is actively engaged in systematic continuing business inside the State of Washington and generating revenue for her corporate owners. And that is unequivocally encompassed by both the due process analysis as well as Washington's long-arm analysis. Okay. Thank you. Thank you, owners. We'll give you two minutes for rebuttal.  May it please the Court, my name is Ann Schroeder and I represent Respondent Gritman Medical Center. I ask the Court to affirm the District Court's dismissal for personal jurisdiction. I'll be splitting my time with Defendant Dr. Marciano's attorney. To start off, based on her resuscitations, I want to point out that Gritman did not buy Moscow Family Medicine until 2018. Dr. Marciano was treating Susan Cox two years prior to that, and then Gritman bought the clinic. It then contracts with a physician's group as independent contractors. Gritman did not advertise for Susan to come here. She was already a member of Dr. Marciano before Gritman purchased the clinic. Secondly, counsel brings up the Controlled Substance Act and how this fits in. However, the complaint follows the medical malpractice statutes of Washington, which does not apply to this case, as RCW 7.70 defines a healthcare provider as one who is not licensed in Washington. And an entity under 7.70 has to employ a physician licensed in Washington. First, Gritman does not employ her as she's an independent contractor, but putting that aside, Dr. Marciano is not licensed in Washington. So even if Washington had jurisdiction, there'd be a choice of law, and Idaho law would apply, which for judicial efficiency and for the state of Idaho, it would be best in Idaho for this case, as it currently is in the state court. I'm not sure. That fact might cut against you, actually, because even if this case is tried in Washington under a choice of law, analysis of Idaho law is going to apply. Then, you know, what's the harm? I mean, maybe sometimes you could say inconvenience, but I know this region of the world, and it's not that inconvenient to go to Washington from eight miles on the other side of the border. The Idaho judges are more familiar with Idaho law, whereas Washington would not be as familiar. Furthermore, it defeats the purpose of why this was brought in Washington, which was to defeat the Idaho non-economic cap. So doing choice of law is not so much inconvenient, but it makes more sense to be in the state where this all occurred. So I know you're saying there was a preexisting relationship between Dr. Marciano and the deceased before Gritman bought the clinic, but, I mean, the fact that the relationship continues, your clients heavily advertising in this small little valley area, why isn't your client, for all practical purposes, availing itself of Washington residents, knowing it's doing so? And I don't understand how you get around that. So we're advertising for patients to come to Gritman. There are no services that are provided in the state of Washington. All telehealth is done with patients who are in Idaho. When she discusses calling it in, that's not for treatment, that's just to refill prescription. Well, but if I see one of your billboards, I'm a Washington resident, I see one of your billboards, I request a televisit. Could I be doing a visit with a doctor from my residence in Washington? No. The policy in Idaho is that telehealth must occur with patients who reside in Idaho. And that is in the record, I believe, under declaration of either Cara Best or Anna Fulmer. Do doctors who practice in Idaho have to comply with Washington law in sending prescriptions to Washington pharmacies? So the Washington Pharmacy Act is a bit... Can you answer yes or no and then give me the explanation? Yeah, because the Pharmacy Act says that a physician has to be licensed in any state. Therefore, an Idaho physician can send prescriptions to Washington. And in doing so, there's some level of interaction with Washington law? Only to the extent that Washington allows physicians to send prescriptions there to be filled. It's important to point out that it's not Gritman or the doctors who decide where the prescriptions are sent. That is directed by the patient. And in this case, Susan Cox said, please send them to my Washington pharmacies. But you could have easily said, well, no, we don't fill there. Yes, although that would cause us a problem with any patient who may be traveling, then they're not allowed to get prescriptions filled while traveling. Well, maybe you'd have a one-off situation in that, but here we have a years-long pattern. I think it would change the entire way that we do prescriptions. And doctors, especially with the remote work and borders, then every hospital limits you to only picking up prescriptions in that state. Because that's essentially what you'd be doing is if you go to Idaho, you'd have to only pick up your prescriptions in Idaho, despite whether you're traveling or living somewhere else, or as with any other state. Well, no, I mean, do what you want. But if you send them to another state, then perhaps you're going to have to be subject to suit in that other state for things related to that specific thing of sending the prescriptions. But specific jurisdiction is our actions toward the state. We're following what the patients want you to do. We're not directing our actions to Washington. A patient is coming to us and saying, can you please send it to them? It's not us starting it. We're just fulfilling their directions and their request. Well, you know, if you were just doing general advertisement on the Internet, that might be one thing. But you're actually putting up billboards in Washington. So aren't you directing activities there? I'm not sure if the record shows the billboards are in Washington or if the billboards are just around. But, again, it's for patients to come to Idaho. It's not directed at the state of Washington. You have to cross the border to get the treatment. Would you address the long-arm statute question? I believe that the Washington long-arm statute as to tort is limiting, especially if you look at the Swank case where they furthered the rule from Lewis, which is personal jurisdiction for a professional non-resident commits an alleged malpractice in another state against a Washington resident. That standing alone does not constitute a tortious act committed in Washington for a resident who was harmed in Washington. How about transacting any business? That I'm not sure if it's been limited because I know this was only just for the negligence. Whether it limits it to the transaction business, I am not sure. And pointing out Swank, Swank is similar because the doctor was in Idaho. The patient was a long-term patient of that doctor, a pediatrician from birth. And the doctor released the patient pursuant to Washington law concerning the concussion stuff to play football, and the court did not find personal jurisdiction over that doctor despite using Washington law to release the patient. And here she's claiming that patient uses Washington law for prescriptions for a patient to pick up prescription. I believe it's similar. The obvious difference is in Swank it's a one-time thing, and in this case it's not. And to point out also, Gritman does not practice medicine. This all comes through doctors. But even the doctor doing this long-term thing, you have to listen to what the patient asks you. And if the patient directs you to send the prescription, you must listen to the patient. It is in the statutes, I believe, for pharmacy-controlled substances, and I don't know the exact number that states that it is the patient's choice to where the prescription is being sent. So much was being made about how much money Gritman might be making out of your doctor's practice group. I mean, is a doctor making – pardon me, is Gritman making any money over prescriptions? Is that somehow – is any net flowing back to the hospital? No, usually prescriptions then go to the drug company. The money the doctors in the hospital makes is through the actual visits to the doctor. When you said that there's a statute that says that the patient gets to determine where the prescription is filled, is that a Washington statute? It's a Washington statute. Well, why would that apply to a prescription that was written in Idaho? Because the Washington statute says that it has to fulfill any prescription written by a physician licensed in any state. That a pharmacy does. Sorry, a pharmacy must. A pharmacy does. But I thought you told us that it was the patient's choice where the prescription was filled. It is the patient's choice. Okay, but again, why would the Washington statute apply to a doctor in Idaho? This applies, sorry, to the physicians in Washington that they must fulfill anything prescribed. Okay, but Dr. Marciano is not a Washington physician. That's correct. So the statute doesn't apply. No, not to her. Okay. Any other questions? Okay. Nope. Thank you. Good morning, Your Honors. Amanda Thorsvig for Dr. Marciano. This Court should affirm because precedent, public policy, and due process all confirm that Washington cannot exercise jurisdiction over Dr. Marciano here. Because really what we have here is a patient who is choosing to come across the border into Idaho to receive medical care from an Idaho licensed only provider, and all of the medical care occurred in Idaho. And the only connection to the forum is one that the plaintiff is creating by instructing Dr. Marciano to send her prescriptions there. And Dr. Marciano did that only as part of the treatment provided in Idaho. So precedent, including Washington's long-arm statute, which I agree is limiting in terms of due process, says that the touchstone for jurisdiction is where the medical care occurred. Because it is a personal service. It's directed to the patient. It's not directed to any particular state. Where the medical care occurred. I mean, that's sort of like a static point that you're trying to draw, that Dr. Marciano is in Idaho, writes a prescription, and somehow the prescription just stays in Idaho. It flowed. I mean, it's not a static occurrence. I agree. But Washington, in looking at its long-arm statute in the Swank case, said that even when a physician sends something into Washington, pursuant to Washington law, and that something causes injury in Washington, that is not sufficient to confer long-arm jurisdiction because what you look at is where the care occurred. Well, we only have examples. I understand your argument. I'd be making it too. But we only have case law out of Washington that is applying that in these one-off situations. So we take two things possibly from that. In the non-one-off situations, jurisdiction applies. And that's obvious, and so there's no case law that needs to tell us that. Or Washington courts just haven't gotten a case yet to announce that this limiting rule applies also in a sort of an extended treatment situation and not a one-off situation. What are we supposed to make of that? We can look at case law from other jurisdictions, which, again, is non-binding, but I do think it's persuasive in how analogous it is. And so on pages 39 and 40 of our brief, we've got a string site of a bunch of cases, and I'd call your attention to a few of them that do involve multiple sustained prescriptions over a period of time that resulted in overdose. For example, we have this Hicks v. Wallet case out of the U.S. District Court of Alabama. The patient overdosed after multiple prescriptions, and the court rejected jurisdiction. And the Nichols v. MMIC case out of U.S. District Court of South Dakota, it was a similar situation. The plaintiff contended there was a routine prescription of medicine, routine calling into pharmacies in the forum. And there are other cases. Does that jive with our Cubbage case? Well, let me just say this. It jives with Cubbage because in Cubbage there was a purposeful availment component that was satisfied because the doctors in Cubbage had reached out and gotten these Medi-Cali licenses, which allowed them to sue in California courts if they didn't get reimbursed for the payment, reimbursed for the services. And here we have no deliberate choice of Dr. Marciano's reaching into the forum. And that underlies these decisions that involve multiple prescriptions because in those cases the courts found that from Hicks v. Wallach, page 23 and 24, the patient's choice of pharmacy in the forum was entirely hers, and there was no evidence that the doctor cared where she filled her prescription or received any benefit from her choice of pharmacy. And the Nichols case was similar in reasoning. So there's an absence of the purposeful availment component, especially here where there was a clinic policy that's from the Declaration of Fulner that said the doctor has to fill the prescriptions at the pharmacy of the patient's choice, even if that is outside of Idaho. I don't understand the purposeful availment idea here. I mean, and maybe it's just because I know this area. But the reality is that Moscow has more things to offer than Pullman and the other little towns near there on the Washington side. And so lots of people in Washington go to Moscow to shop and to do other things. And the Moscow businesses benefit from that and encourage that. And that's certainly true in the medical side of things, too, for that practical reality and also the reality of the liability difference between Idaho and Washington, much more favorable for doctors to be in Idaho. So with that reality, how is it fair to say that this medical clinic sitting on the Idaho side of the line isn't actually trying to encourage Washington patients to come there? That just doesn't seem real to me. Well, there's no evidence in the record that Dr. Marciano herself personally was advertising or reaching out or trying to solicit Washington patients to come. No, but she knows for years and years and years that she has Washington patients. And she's not discouraging that and she's not saying, you know, you really should get a Washington doctor. I don't really want to do this, you know, this thing. She's not doing any of that. Like, this is good for her that she has more patients. And a natural follow-up to that is if she decides, well, I better not prescribe or have my prescriptions filled in Washington, I'll just stop filling them there and then she's going to lose her patient base. They'll just move on to somebody else. I think that that does, though, underscore the policy reason why Washington, in evaluating its long-arm statute and other courts, have said, medical malpractice claims are unique. We do not want them to be a portable tort because that is going to erect access to care barriers. It's going to be harmful to patients because if a doctor says, look, I don't want there to be jurisdiction in neighboring or even distant states. I'm afraid of having to defend in those less favorable forums. I'm not going to treat you. I'm not going to see you. You're going to have to go get your prescription from somebody else. That is exactly the policy concern that Wright v. Yaxley, other courts across the nation, Washington have recognized in creating this exception for medical malpractice actions. And that is a very real concern, especially in a more rural area where there might not be just this plethora of doctors who can treat patients. And that is why courts look at the location where the care is provided. And there is another case, Boyd v. Green, where it said, you know, the prescriptions are just a component of the medical care provided in the doctor's office. And here that's the case, too. Dr. Marciano didn't derive any benefit from prescribing into Washington. And if you look, too, at where this lawsuit is focused, it is on Dr. Marciano's medical judgment that occurred in Idaho. The complaint talks about you should have noticed that this patient was deteriorating. You should have had informed consent discussions with her about the combination of medications she was taking. All of that happened in Idaho, and that ties jurisdiction very closely to Idaho. And Idaho, too, then has an interest, stronger than Washington's, in ensuring its providers are competent and providing competent care to its patients. So for all of these reasons, we'd ask that you affirm we think the district court got it right and that there's no personal jurisdiction against Dr. Marciano. Thank you. Thank you, counsel. We'll give you two minutes. A physician, primary care physician, and that physician's owner benefit financially from the recurring business of an opioid addict. It is not the money that's paid to the pharmacy that they benefit from. It's the fact that the patient comes back time after time after time after time in order to get those prescriptions. So the physician is directly benefiting financially from creating an opioid addict, and this is part of the problem of how the opioid addiction scourge got going. That is happening in southeast Washington. Second, the physician announces that she is not licensed in Washington, but Washington law, she says, requires her to go with the patient's choice. I think she backed off of that. That's Washington law. The doctor's not subject to Washington law. Yeah, and that's an interesting point, because Washington-controlled substance law requires that prescriptions be issued in conformance with Washington law. So if the doctor is not licensed in Washington, how is the doctor writing prescriptions in conformance with Washington law? Does Washington allow the pharmacies, aren't the pharmacies allowed to fill prescriptions from out of state? In Washington, pharmacies are required to dispense at the directive of a physician. Now, the language is a physician who writes for a legitimate medical purpose in compliance with Washington law. But as you can see here, the pharmacies are dispensing, because these are orders of the physician. So they're not drawing a distinction. That's something that still needs to be, frankly, to be addressed. Third, the delivery of medical services. The Idaho prescription, at its intent, is intended to affect the medical treatment in Washington. The intent, as the doctor sits in the office, is to deliver that to a Washington pharmacist to affect the intent of that opioid in the state of Washington on that pain clinic to cause an addiction and ultimately, here, to cause a death. All right, you're out of time. Do we have any further questions? All right. Thank you, Your Honors. I thank counsel for the helpful argument. The matter of Cox v. Gritman Medical Center is submitted, and our calendar is complete for the day. All rise.
judges: BYBEE, FORREST, Rodriguez